IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Magdaleno Ybarra, | : | Case No. 3:05 CV 7354 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this case pursuant to 28 U.S.C. § 636 (c) (1). Pending are Plaintiff's Third Attorney Fee Application filed pursuant to the Equal Access to Justice Act (EAJA) 28 U.S.C. § 2412 (Docket No. 37) and Defendant's Objection (Docket No. 38). For the reason that follow, Plaintiff's Application is denied.

## FACTUAL AND PROCEDURAL BACKGROUNDS

On October 25, 2001, Plaintiff filed applications for DIB and SSI alleging that he was a diabetic with discogenic and degenerative back disorders (Tr. 68, 598). His application was denied initially and upon reconsideration (Tr. 76-79, 71-73, 588-591). Upon denial of his applications at the agency level, Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (Tr. 69, 599). On December 17, 2003, an administrative hearing, at which Plaintiff, represented by counsel, and a Vocational Expert

appeared and testified.  At the hearing, Plaintiff amended the alleged onset date of disability from May 1, 1993, to May 1, 2001.  On February 1, 2005, the ALJ, Yvonne K. Stam, rendered an unfavorable decision denying Plaintiff's claim (Tr. 16-28).  The Appeals Council denied further review of the ALJ's decision (Tr. 7-9).  Plaintiff then filed a timely action in this Court seeking judicial review of the Commissioner's determination.

Before the district court completed judicial review, the parties filed a joint stipulation for remand which became an order of the Court on February 16, 2007 (Docket No. 28).  Within 30 days, Plaintiff filed a partial Motion for Attorney fees (Docket No. 29).  On March 9, 2007, Plaintiff amended the Motion for Attorney Fees by providing a complete itemization of his request for attorney fees (Docket No. 30).  Defendant filed a Response objecting to the request for attorney fees (Docket No. 33).

On July 5, 2007, the Appeals Council published a Notice of Appeals Council Action proposing that absent new and material evidence or persuasive arguments to the contrary, it was prepared to find that prior to February 6, 2002, Plaintiff was capable of light work activity and as of February 6, 2002, Plaintiff could not sustain full-time work (Docket No 32, Exhibit 1).  On August 31, 2007, the Appeals Council rendered a final decision adopting the terms of the notice of proposed action (Docket No. 34).  On August 31, 2007, Plaintiff filed a Motion for Attorney Fees including the decision granting retroactive benefits as an exhibit (Docket No. 32), and Defendant filed an Objection (Docket No. 33).  Plaintiff filed a Motion for Leave to Submit the opinion of the Appeals Council.  The Magistrate dismissed the application without prejudice pending expiration of the appeals period (Docket No. 35).  Plaintiff filed a timely Third Attorney Fee Application and Defendant objects to an award of attorney fees or alternately, the amount of attorney fees (Docket Nos. 37 & 38).

## **EAJA STANDARD FOR AWARDING FEES**

A court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.  28 U. S. C. § 2412(b) (Thomson Reuters/West 2008). The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.  28 U.S.C.A. § 2412(b) (Thomson Reuters/West 2008).  A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that:

> (1) the party is a prevailing party, (2) the party is eligible to receive an award under this subsection, (3) the position of the United States was not substantially justified and (4) the itemized statement from any attorney or expert witness representing or appearing in behalf of the party states the actual time expended and the rate at which fees and other expenses were computed.

28 U. S. C. § 2412(d)(1)(B) (Thomson Reuters/West 2008).

Whether the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.  28 U. S. C. § 2412(d)(1)(B) (Thomson Reuters/West 2008).  The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  *Hensley v. Eckerhart,* 103 S. Ct. 1933, 1941 (1983).

## **DISCUSSION**

Plaintiff suggests that as a result of efforts by his counsel, the Commissioner stipulated to a

remand. Upon remand, Plaintiff received a partial reversal of the Commissioner's decision which he contends conferred upon him prevailing party status. Plaintiff further claims that Defendant's position could not have been substantially justified and requests fees totaling $7,175.

Defendant concedes that Plaintiff has prevailing party status (Docket No. 11, pp. 3/11 -4/11). Defendant contends, however, that the Court never reached the question of whether the ALJ's decision was supported by substantial evidence. The government agreed to a sentence six remand based upon Plaintiff's subsequent application and award of benefits for a period of time that was considered in the case pending in this Court. Defendant contends that his position was substantially justified.

Although a Social Security claimant is a prevailing party, EAJA fees are not available to the claimant unless the Commissioner's position lacks "a reasonable basis in law and fact." *Vanderkolk v. Commissioner of Social Security Administration,* 2008 WL 59195, * 2 (W. D. Mich. 2008) (*citing Bergen v. Commissioner of Social Security,* 454 F.3d 1273, 1277 (11th Cir. 2006)). In the context of a Social Security appeal, the fact that the court finds a decision of the Commissioner is not supported by substantial evidence "is not equivalent to a finding that the position of the United States was not substantially justified" under the EAJA. *Id.* (*citing Couch v. Secretary of Health and Human Services,* 749 F.2d 359, 360 (6th Cir. 1984)). Thus, the government's position has been found to be substantially justified even though the case was remanded for further proceedings. *Id.* (*citing Gray v. Commissioner of Social Security*, No. 00-6616, 2001 WL 1450821 at *1 (6th Cir. Nov.6, 2001) (remanded due to error of law); *Cunningham v. Halter,* No. 00-4034, 2001 WL 1450778 (6th Cir. Oct.30, 2001) (government's position substantially justified when, although the matter was remanded for further development regarding three specific issues, the government had successfully defended several claims); *Anderson v. Commissioner of Social Security,* No. 98-6284, 1999 WL 1045072 at * 5 (6th Cir. Nov.12, 1999)

4

(although an ALJ's decision contained flaws which require a reversal of the denial of benefits and a remand for further consideration, such a reversal did not automatically mean that the Commissioner's decision to defend the ALJ's decision to deny benefits was not "substantially justified" under the EAJA).

The Magistrate does not find that by agreeing to remand the Commissioner essentially agreed that his position was not substantially justified.  The Commissioner articulated several reasons for his finding, substantially justifying his decision that from May 1, 2001, through February 1, 2005, Plaintiff was not under a disability.  The Commissioner only stipulated to remand because Plaintiff was awarded benefits for a period of time beginning on February 6, 2002.

The Magistrate finds that the Commissioner has met the burden of showing that his position was substantially justified.  The Commissioner successfully defended several claims.  Plaintiff argued that the ALJ failed to attribute controlling weight to the opinions of Drs. Ravi K Adusumilli, Dwight E. Bryan, Henry Green, and Michael Jajuga.  Instead, the ALJ relied upon the opinion of state consultants Drs. Trivedi and Matanguihan.  The Commissioner argues that the ALJ was not bound by the opinions of Drs. Adusumilli, Bryan and Jajuga since such opinions were not based on objective medical findings; there was substantial medical evidence to the contrary and Drs. Adusumilli and Bryan were not treating physicians.  The Commissioner attributed substantial weight to Dr. Green's opinions as they provided a longitudinal study of Plaintiff's continued treatment for plantar fibromatosis and treatment after debridement (Tr. 354-374).

The Commissioner successfully demonstrated that Plaintiff did not suffer from carpal tunnel syndrome.  The only medical evidence before the ALJ was the study conducted by Dr. Carlos A. De Carbalho indicating moderate bilateral carpal tunnel syndrome, the test report confirming the diagnosis, and the suggestion that the diagnosis was attributable to Plaintiff's diabetes.  Dr. Carbalho's reports

consisted of raw medical data. There was no interpretation of that data or application of such data tp vocational criteria as required by the regulations (20 C. F. R. § 404.1513(b) and (c) (Thomson/West 2006) (medical reports should include "[a] statement about what you can still do despite your impairment(s)," including a statement about the ability to do work-related activities such as "handling objects"). Given this state of the record, the evidence, at the least, was not definitive that Plaintiff was disabled by the effects of carpal tunnel syndrome.

The Commissioner demonstrated that the medical record did not support Plaintiff's claim of peripheral neuropathy in all extremities. Under Listing 9.08A, neuropathy "must be demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. Pt. 404, Subpt. P § 9.08A (Thomson Reuters/West 2006). Persistent disorganization of motor function is in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. 20 C. F. R. Pt. 404, Subpt. P, App.1 § 11.00C (Thomson/West 2006). The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00C (Thomson/West 2006).

Although diagnosed with diabetic peripheral neuropathy, none of the nerve conduction or imaging studies showed evidence of significant decreases in the range of motion or strength in two extremities (Tr. 214-215). The Commissioner demonstrated that Drs. Matanguihan and Trivedi observed Plaintiff's antalgic gait and Dr. Carvalho diagnosed Plaintiff with mild demyelinative proximal motor

6

neuropathies attributable to diabetes (Tr. 328, 335, 380). This evidence did not rise to the level required to show persistent disorganization in two extremities.

Next, Plaintiff argued that an inherent side effect of heart surgery was a mental impairment. Consequently, a consultative examination was required to show the severity of the mental impairment. However the Commissioner was able to pinpoint evidence suggesting that Plaintiff had already been diagnosed with a mental impairment. Such impairment was mild in severity and controlled by infrequent, small doses of medication (Tr. 304, 380, 404, 491, 493-493, 507). The ALJ could rationally conclude that the medical reports provided enough information to assess the impact of Plaintiff's mental impairment on his ability to perform substantial gainful employment. The ALJ was not obligated to purchase a consultative examination to assess mental health.

In this case, several references were made to obesity. The Commissioner conceded that Plaintiff was morbidly obese. However, Plaintiff failed to provide a longitudinal clinical record of the cumulative affects of obesity as required in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § Q. There was no evidence in the medical record that Plaintiff's weight adversely affected the severity of his impairment.

Finally, Plaintiff objected to the ALJ's failure to "take notice" of his herniated disk at C3-C4. The Commissioner demonstrated that the medical evidence of herniated disks was inconclusive. There were allegations that a herniated disk existed but minimal evidence of its severity or prescribed treatment. In fact, radiological imaging showed minimal pressure effect (Tr. 230, 295). This evidence did not support Plaintiff's contention that the herniated disks met or equaled a medically listed musculoskeletal impairment.

Based on the record, there was a substantial likelihood of success for Defendant in this case even though Plaintiff prevailed in a subsequent case. Defendant's positions had a reasonable basis in either

fact or law. Defendant appropriately applied his own regulations and governing law. Defendant's conduct can be characterized as reasonable throughout the proceeding. Plaintiff's request for attorney fees must therefore be denied.

    So ordered.

                                      /s/ Vernelis K. Armstrong
                                      United States Magistrate Judge

Dated: October 1, 2008